UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BRIAN GUIDRIOZ                                          CIVIL ACTION

VERSUS                                                  NO. 17-6423

NANCY A. BERRYHILL, ACTING                              SECTION "I" (2)
COMMISSIONER OF SOCIAL SECURITY

## FINDINGS AND RECOMMENDATION

Plaintiff, Brian Guidroz,[1] seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying plaintiff's claim for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") under Titles II and XVI of the Act. 42 U.S.C. §§ 423, 1382c. This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2(B).

I.    PROCEDURAL HISTORY

Guidroz filed his applications for DIB and SSI on January 19, 2014, alleging disability since September 1, 2009, due to rheumatoid arthritis. (Tr. 60, 71, 141-50, 167, 172). After his claim was denied at the agency level, he requested a hearing before an Administrative Law Judge (ALJ), which was held on January 25, 2016. (Tr. 39-57). The ALJ issued a decision denying the application on May 4, 2016. (Tr. 25-33). After

---

[1] Plaintiff's complaint spells his name as "Guidrioz," but all of his records indicate that his name is spelled "Guidroz," which is the spelling the court uses in this report and recommendation.

the Appeals Council denied review on April 20, 2017, the ALJ's decision became the Commissioner's final decision for purposes of this court's review. (Tr. 1-4).

Plaintiff filed a motion for summary judgment. Record Doc. No. 17. Defendant filed a timely cross-motion for summary judgment, Record Doc. No. 19, instead of an opposition memorandum, as ordered. Record Doc. No. 18. The court treats plaintiff's summary judgment motion as a memorandum of facts and law regarding his instant appeal from the Commissioner's final decision and treats defendant's cross-motion for summary judgment as a reply memorandum of facts and law.

II.    STATEMENT OF ISSUES ON APPEAL

Plaintiff contends that the Commissioner made the following errors:

A.    The ALJ erred in finding that Guidroz's impairments of degenerative disc disease, pes planus deformity of both feet, and vision impairment (damage of optic nerve, glaucoma, hypertensive retinopathy) are not severe.

B.    The ALJ failed to give proper weight to the opinions of plaintiff's treating physicians.

III.    ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

1.    Guidroz meets the insured status requirements of the Act through March 31, 2013.

2.    He has not engaged in substantial gainful activity since his alleged onset date of September 1, 2009.

3.    He has a severe impairment consisting of rheumatoid arthritis.

4.    Plaintiff has the residual functional capacity to perform light work, except that he is restricted to occasional postural activities, handling and

2

fingering; and must avoid concentrated exposure to work hazards such as heights and dangerous machinery.

5.    His medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but his statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical and other evidence in the record.

6.    Guidroz has no past relevant work.

7.    Considering his age, education, work experience and residual functional capacity, jobs exist in significant numbers that plaintiff can perform, such as security guard, usher and information clerk.

8.    Plaintiff has not been under a disability since September 1, 2009 through the date of the ALJ's decision.

(Tr. 19-25).

IV.    ANALYSIS

    A.    Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence.    Richard ex rel. Z.N.F. v. Astrue, 480 F. App'x 773, 776 (5th Cir. 2012) (citing Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005)); Stringer v. Astrue, 465 F. App'x 361, 363 (5th Cir. 2012) (citing Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002)).    Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Richard ex rel. Z.N.F., 480 F. App'x at 776; Stringer, 465 F. App'x at 363-64; Perez, 415 F.3d at 461. This court may not reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision. Halterman ex rel. Halterman v. Colvin, 544 F. App'x 358, 360 (5th Cir. 2013) (citing Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000)); Stringer, 465 F. App'x at 364. The Commissioner, rather than the courts, must resolve conflicts in the evidence. McCaskill v. Dep't of Health & Human Servs., 640 F. App'x 331, 332-33 (5th Cir. 2016) (citing Perez, 415 F.3d at 461); Luckey v. Astrue, 458 F. App'x 322, 324 (5th Cir. 2011) (citing Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990)); Newton, 209 F.3d at 452.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503 U.S. 91 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it. Joubert v. Astrue, 287 F. App'x 380, 382 (5th Cir. 2008) (citing Perez, 415 F.3d at 461). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. Ray v. Barnhart, 163 F. App'x 308, 311 (5th Cir. 2006) (citing Perales, 402 U.S. at 390); Perez, 415 F.3d at 461.

To be considered disabled and eligible for SSI or DIB,[2] plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A).  The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability.  20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2015).  The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.[3]  Id. §§ 404.1520, 416.920;

---

[2]The relevant law and regulations governing claims for DIB and SSI are identical.  Carmon v. Barnhart, 81 F. App'x 410, 411 n.1 (3d Cir. 2003) (citing Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994)); Baltierra v. Chater, 70 F.3d 1268, 1995 WL 696740, at *1 (5th Cir. Oct. 19, 1995) (citing Haywood v. Sullivan, 888 F.2d 1463, 1467 (5th Cir. 1989)); Bryan v. Halter, 252 F.3d 1357, 2001 WL 422878, at *1 (5th Cir. Apr. 5, 2001) (citing Haywood, 888 F.2d at 1467).

[3]The five-step analysis requires consideration of the following:
First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).
Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled.  Id. §§ 404.1520(c), 416.920(c).
Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence.  Id. §§ 404.1520(d), 416.920(d).
Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated.  If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled.  Id. §§ 404.1520(e), 416.920(e).
Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy.  If the claimant cannot meet the demands, he or she will be found disabled.  Id. §§ 404.1520(f)(1), 416.920(f)(1).  To assist the Commissioner at this stage, the regulations provide certain tables that

Alexander v. Astrue, 412 F. App'x 719, 720 (5th Cir. 2011) (citing Audler v. Astrue, 501 F.3d 446, 447 (5th Cir. 2007)); Perez, 415 F.3d at 461. The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled. Id.

The claimant has the burden of proof under the first four parts of the inquiry. If he successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing. When the Commissioner shows that the claimant is capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding. Alexander, 412 F. App'x 720-21; Perez, 415 F.3d at 461.

The court weighs four elements of proof when determining whether there is substantial evidence of disability: "'(1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.'" Chrisner v. Astrue, 249 F. App'x 354, 356 (5th Cir. 2007) (quoting Wren v. Sullivan, 925 F.2d 123, 126 (5th Cir. 1991)); accord Perez, 415 F.3d at 463.

B.    Factual Background

---

reflect major functional and vocational patterns. When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 ("Medical-Vocational Guidelines").

Guidroz testified at the hearing that he was 49 years old and had an eighth grade education. He said he had last worked in 2007 for about one day, but last had a full-time job in 2000, when he was hit by a school bus while working. He stated that he received a worker's compensation settlement in 2004. (Tr. 41). He testified that he was awarded disability benefits by the Commissioner for four or five years, but that his benefits were terminated after he was reevaluated in 2007 or 2009. (Tr. 42).[4] He said he had no other jobs in the past 15 years.

Plaintiff stated that he lives with his 67-year-old mother, who is employed. He said he does nothing during the day because of his rheumatoid arthritis. (Tr. 43-44). Guidroz testified that he can walk one-half to one mile before he needs to take a break. He said he can only stand for ten minutes and prefers to sit, but that standing up from sitting causes pain. (Tr. 44). He stated that he can sit for only five to ten minutes before he must stand up.

Plaintiff said he is treated for rheumatoid arthritis by Dr. Luis Espinoza, a rheumatologist. He stated that he was diagnosed with "some femur (PHONETIC) on my lungs[5] caused by the medication I take," which makes him short of breath. (Tr. 45). He

---

[4] The Commissioner's records indicate that plaintiff was found disabled in 2000 from a back impairment secondary to a motor vehicle accident, but his status was discontinued in 2009 due to medical improvement with an residual functional capacity for medium work. His current applications therefore have an alleged onset date of September 1, 2009. (Tr. 65).

[5] On December 8, 2015, Luis Espinoza, M.D., noted that Guidroz had recently been diagnosed with pulmonary fibrosis by a Dr. Barton (Tr. 405), but the record contains no evidence from Dr. Barton. "Pulmonary fibrosis scars and thickens the tissue around and between the air sacs (alveoli) in your

said he started seeing another doctor, who changed his medication for this condition. (Tr. 45-46).

Guidroz testified that his rheumatoid arthritis affects him daily from his toes to his neck and that he cannot do much. He said the arthritis "irritates" his hands and feet most of the time so that his fingers lock up and his feet fail when he walks. He stated that he cannot lift anything and that it hurts to stand, walk, bend or do anything. He said he is in pain for 24 hours every day. (Tr. 46).

Plaintiff testified that he takes pain medication, but it does not help. (Tr. 46-47). He stated that his pain had worsened to the point that he cannot walk or lift his hand. He seemed to say he had improved with medication, but then stated that his condition never goes away and "pretty much all that still goes on . . . with the medication." (Tr. 47).

Guidroz stated that his fingers might lock up if he works with them for one-half to one hour, so he tries not to use his fingers much. He said he has no side effects from his medication other than "femur" in his lungs. He stated that his memory is not good anymore and that he can only concentrate on trying to loosen and work his body.

Plaintiff testified that the worst part of the day is when he gets up in the morning and has "to try to land on my feet. But I, if I do land on my feet, if like I said, walk and help me and it hurt[s] me. . . . [S]o . . . it's a no-win situation . . . , but if I could walk

---

lungs. This makes it more difficult for oxygen to pass into your bloodstream." MayoClinic.org (Mayo Foundation for Medical Education and Research 1998-2018), https://www.mayoclinic.org/diseases-conditions/pulmonary-fibrosis/symptoms-causes/syc-20353690 (last visited May 14, 2018).

. . . , it pretty much loosen up, or I better move a little better . . . ."  (Tr. 48).  He continued: "[A]rthritis . . . is just tricky, . . . I don't know what I'm better move in the morning . . . .  I might not better raise my hand as high as my head, . . . or . . . either I can raise my hand and I can't move my feet, . . . that's how it really affect[s] my body . . . ."  (Tr. 48-49).  He stated that he does not know what part of his body is not going to work.  He said he might sit for ten minutes, then be unable to walk out of the room.

When asked whether he can bathe and dress himself, Guidroz said it depends on whether he can "get loose" after waking up in the morning.  He stated that, if he can move around, he can brush his teeth, for example, but that he might be unable to do the same thing the next day and would need someone to brush his teeth for him, and that this condition might last for two weeks.  He said he sometimes cannot close his hand or twist the top off a bottle.  (Tr. 49).  He testified that his mother and a friend help take care of him, and that his mother does the cooking and household chores.

Plaintiff said he gets nightly shooting pains through his fingers and feet that make him unable to sleep.  He stated that the pain is so strong it feels like his ankle will break, causes his feet to rise up out of the bed and makes him cry.  (Tr. 50).  He testified that sometimes he can bend over to pick up something from the floor, but it makes him short of breath, he can only do it if his hands are all right and he cannot do it if he has too much pain in some part of his body that day.  (Tr. 50-51).  He said he is right-handed.  Guidroz stated that he will not climb stairs any more because of constant pain in his

ankles.  He said that his rheumatoid arthritis started in his ankles and then began affecting other parts of his body.  (Tr. 51).

Plaintiff testified that he worked as a hopper on a garbage truck and that his back pain began after he was knocked off the truck by a school bus in 2000.  He stated that he has a deteriorated disc that pinches his nerves.  (Tr. 51-52).  He said he has "to go through a three-step process up and toward the sides to get to bed or walk."  He said he either could not walk or could walk only if bent over.  He stated that he had taken injections that straightened his back and that he has one injection left to take.  (Tr. 52).

Guidroz said he cannot read or write well.  He stated that his testimony had covered all of his issues with his back, arthritis and lung.  (Tr. 52-53).

C.    Vocational Expert Testimony

A vocational expert, Beth Drury, testified that the file revealed that plaintiff had worked as a janitor and a hopper for about a week each in 2008 and as a seasonal laborer in the sugar cane fields in 1999 to 2000.  (Tr. 53).  The ALJ posed a hypothetical of a person with the same age and education as Guidroz and no past relevant work, who can perform light work, except that he could perform only occasional postural activities and frequent handling and fingering, and  must avoid concentrated exposure to work hazards such as heights and dangerous machinery.  Drury testified that such a person could perform light, unskilled jobs that are available in the national and state economy, such as security guard, usher and information clerk.

The ALJ modified the hypothetical to include only occasional handling and fingering. (Tr. 54). The vocational expert stated that this limitation would not affect the jobs of security guard and usher, but would reduce the number of information clerk jobs by 50 percent. When the ALJ further modified the hypothetical to include a need to take a 10-minute break each hour, Drury testified that such a person would not be able to perform any of the jobs.

Plaintiff's attorney modified the ALJ's second hypothetical to include a sit/stand option. Drury stated that an option to alternate between sitting and standing every ten minutes at the person's leisure throughout an eight-hour day would not affect any of the jobs she had identified. (Tr. 55).

Plaintiff's attorney then posed a hypothetical that deleted the sit/stand option and added a limitation that the person is off-task 20 percent of an eight-hour day because of complications with pain. Drury testified that such a person could not perform any jobs. (Tr. 56).

D.    Medical Evidence

I have reviewed the medical records in evidence and the ALJ's summary of the medical evidence. (Tr. 30-31). I find the ALJ's summary substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

E.    Plaintiff's Appeal

      1.      The ALJ did not err by finding that Guidroz's degenerative disc disease, pes planus deformity of both feet and vision impairment are not severe.

At step two of the sequential evaluation, the ALJ found that Guidroz has a severe impairment of rheumatoid arthritis, but that his lumbar degenerative disc disease, pes planus deformity[6] of both feet, hypertension and vision problems are non-severe. (Tr. 28). Plaintiff argues that the ALJ erred by failing to find that his pes planus, degenerative disc disease and "vision impairment (damage of optic nerve, glaucoma[7] [and] hypertensive retinopathy[8])," are severe impairments. Plaintiff's memorandum, Record Doc. No. 17-3 at p. 2.

In the Fifth Circuit, "[a]n impairment is not severe 'only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.'" Herrera v. Comm'r of Soc. Sec., 406 F. App'x 899, 902 n.1 (5th Cir. 2010) (quoting Loza v. Apfel, 219 F.3d 378, 391 (5th Cir. 2000)); accord Stone v. Heckler, 752 F.2d 1099, 1101 (5th Cir. 1985). The ALJ cited the relevant standard and

---

[6]Pes planus is "a condition in which the longitudinal arch is broken down, the entire sole touching the ground;" synonyms are "flatfoot, talipes planus." Stedman's Medical Dictionary (Wolters Kluwer Health 2004-2018), http://www.medilexicon.com/dictionary/67489 (last visited May 14, 2018).

[7]Glaucoma is an eye disease characterized by increased intraocular pressure, excavation and atrophy of the optic nerve. Id., http://www.medilexicon.com/dictionary/37389 (last visited May 16, 2018).

[8]Retinopathy is a noninflammatory degenerative disease of the retina. Id., http://www.medilexicon.com/dictionary/77958 (last visited May 16, 2018).

explained why he found that plaintiff's lumbar degenerative disc disease, pes planus deformity and vision problems were not severe.

At the second step of the evaluation, the ALJ determines the "medical severity" of the claimant's medically determinable impairments. 20 C.F.R. § 404.1520(a)(4)(ii). When the ALJ has proceeded beyond step two to find at a subsequent step that a claimant is not disabled, plaintiff's argument that the ALJ failed at step two to find that a particular impairment is severe

> is inapposite because the ALJ did not [deny] plaintiff's benefits based on a finding that [his] impairments are not severe. See Chapparo v. Bowen, 815 F.2d 1008, 1011 (5th Cir. 1987) (argument regarding improper application of Stone standard irrelevant to disposition of case if outcome of case [did] not turn on issue of severity); see also Shipley v. Director of Health and Human Services, 812 F.2d 934, 935 (5th Cir. 1987). The ALJ's report contains a statement of the Stone standard and a determination that as it applied to this case, [one of claimant's several alleged impairments] is a severe impairment. . . . The ALJ then proceeded to the next step of the sequential evaluation and assessed whether an impairment or a combination of plaintiff's impairments met or exceeded the severity of the impairments listed in the appendix. See 20 C.F.R. § 404.1594(f)(2). In the absence of a "non-severe" finding as to any one of plaintiff's impairments and a decision to [deny] plaintiff's benefits based on a "non-severe" finding, plaintiff cannot complain that any prejudice resulted from the ALJ's performance at this stage in the evaluation. See Brock v. Chater, 84 F.3d 726, 729 (5th Cir. 1996) (decision will not be reversed where claimant makes no showing that she was prejudiced by deficiencies she alleges).

Lawrence v. Barnhart, No. 01-1366, 2002 WL 356316, at *2 (E.D. La. Mar. 4, 2002); see also Taylor v. Astrue, 706 F.3d 600, 603 (5th Cir. 2012) ("any error by the ALJ in not following the procedures set out in Stone [at step two] is harmless" when the ALJ

13

found at step five that plaintiff was not disabled by his severe impairments); Bradshaw v. Astrue, No. 1:07-CV-0150-C, 2008 WL 4387087, at *6 (N.D. Tex. Sept. 26, 2008) (citing Robinson v. Barnhart, 183 F. App'x 451, 455 (5th Cir. 2006); Reyes v. Sullivan, 915 F.2d 151, 154 n.1 (5th Cir. 1990); Chapparo, 815 F.2d at 1011) ("In more recent cases, the Fifth Circuit has found no merit to claimants' arguments of ALJ error arising out of the failure to correctly apply or state the Stone standard where the sequential evaluation process proceeds past step 2."); accord Arnett v. Astrue, 676 F.3d 586, 591 (7th Cir. 2012); Delia v. Comm'r of Soc. Sec., 433 F. App'x 885, 887 (11th Cir. 2011) (citing Reeves v. Heckler, 734 F.2d 519, 524 (11th Cir. 1984)); Nejat v. Comm'r of Soc. Sec., 359 F. App'x 574, 577 (6th Cir. 2009) (citing Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987)); Gonzalez v. Berryhill, No. 3:17-CV-00098-RFC, 2017 WL 4563661, at *3 (W.D. Tex. Oct. 11, 2017).

"Because the ALJ did not summarily dispose of Plaintiff's claims at Step Two, but instead determined that Plaintiff had at least one severe impairment and proceeded to Step Four [or Five] to determine that Plaintiff was not disabled, the proper focus here is whether substantial evidence supports the ALJ's residual functional capacity (RFC) assessment and ultimate determination that Plaintiff was not disabled." Lavery v. Astrue, No. V-11-3, 2012 WL 3276711, at *5 (S.D. Tex. Aug. 8, 2012) (citing Chaparro, 815 F.2d at 1011) (footnote omitted); accord Marston v. Berryhill, No. 3:16-CV-1805-N-BN, 2017 WL 3328122, at *4 (N.D. Tex. June 29, 2017), report & recommendation

adopted, 2017 WL 3316135 (N.D. Tex. Aug. 3, 2017); Alvarez v. Colvin, No. 4:16-CV-00432, 2017 WL 2712872, at *4 (S.D. Tex. June 22, 2017).

Having found at step two that Guidroz had a severe impairment, the ALJ proceeded through all of the subsequent steps.  The ALJ considered all of the evidence concerning plaintiff's medically determinable impairments, and found that Guidroz could perform light work with the restrictions noted in the ALJ's decision and could perform jobs that are available in the national and state economy.  The ALJ's failure to find at the second step that plaintiff's lumbar degenerative disc disease, pes planus deformity and vision problems are not severe is irrelevant and non-prejudicial to him.

Even if the court were to review the ALJ's step two determination, substantial evidence supports his finding that these conditions are not severe for the reasons cited in his opinion.  As the ALJ stated, Guidroz did not complain in his written submissions or his testimony that degenerative disc disease, pes planus or hypertensive retinopathy affects his ability to work.

"At step two, the claimant bears the burden of showing that [he] has a severe impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities." Thomas v. Comm'r of Soc. Sec., No. 16-830-RLB, 2018 WL 1095569, at *13 (M.D. La. Feb. 28, 2018) (citing Cagle v. Colvin, 2013 WL 2105473, at *5 (S.D. Tex. May 14, 2013)); accord Taylor v. Berryhill, No. 16-16587, 2017 WL 4838817, at *6 (E.D. La. Sept. 28, 2017), report &

recommendation adopted, 2017 WL 4791756 (E.D. La. Oct. 23, 2017) (citing Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987)); Morris v. Astrue, No. 4:11-CV-631-Y, 2012 WL 4468185, at *8 (N.D. Tex. Sept. 4, 2012), report & recommendation adopted, 2012 WL 4466144 (N.D. Tex. Sept. 27, 2012) (citing Crowley v. Apfel, 197 F.3d 194, 198 (5th Cir. 1999)).  Guidroz fails to carry this burden.  He cites only to his diagnoses and treatment with various medications without identifying any functional limitations caused by his degenerative disc disease, pes planus or hypertensive retinopathy.

"The severity of an impairment is measured in terms of its effect on the claimant's ability to work.  A mere diagnosis [and treatment for the diagnosed condition] is insufficient to establish that an impairment is severe because it does not reveal the extent to which the impairment limits the claimant's ability to work."  Stone v. Astrue, No. 8:12-cv-35-T-17TBM, 2013 WL 1212889, at *6 (M.D. Fla. Feb. 26, 2013), report & recommendation adopted, 2013 WL 1212881 (M.D. Fla. Mar. 25, 2013), aff'd, 586 F. App'x 505 (11th Cir. 2014) (citing Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005)); accord Casares v. Astrue, No. 4:11CV162, 2013 WL 960229, at *6 (S.D. Miss. Feb. 25, 2013), report & recommendation adopted, 2013 WL 960186 (S.D. Miss. Mar. 12, 2013) (citing Hames v. Heckler, 707 F.2d 162, 165 (5th Cir. 1983)); Morris v. Astrue, No. 4:11-CV-631-Y, 2012 WL 4468185, at *8 (N.D. Tex. Sept. 4, 2012), report & recommendation adopted, 2012 WL 4466144 (N.D. Tex. Sept. 27, 2012) (citing Crowley v. Apfel, 197 F.3d 194, 198 (5th Cir. 1999)); Ranes v. Astrue, No. 3:08-CV-

2030-D, 2009 WL 2486037, at *3 (N.D. Tex. Aug. 14, 2009) (citing Randall v. Astrue, 570 F.3d 651, 657-59 (5th Cir. 2009)).

As to plaintiff's feet, x-rays on August 27, 2014 revealed bilateral pes planus with mild spurring noted as a degenerative finding. (Tr. 342). Although Guidroz at times complained to his treating providers of pain in his "feet," his main lower extremity complaints were of pain in his ankles and his physical examinations primarily revealed swelling and pain in his ankles, rather than his feet. None of the physicians who opined regarding plaintiff's functional capacity mentioned pes planus or foot deformities, and no doctor noted any functional limitations caused by this condition. On April 14, 2015, plaintiff's treating rheumatologist, Dr. Espinoza, noted that Guidroz has high arches and recommended arch support inserts. (Tr. 414). This recommendation supports the ALJ's finding that plaintiff's food condition is not severe.

As to Guidroz's vision, an eye examination by optometrist Laura T. Buisson, O.D., on October 20, 2014, revealed no retinal problems. (Tr. 393-94). Plaintiff returned to Dr. Buisson on June 11, 2015, complaining of a spot in the vision of his right eye. Dr. Buisson noted that Guidroz had recently been diagnosed with very high uncontrolled hypertension. She diagnosed hypertensive retinopathy in plaintiff's right eye and referred him for evaluation of "possible hypertensive damage of the optic nerve vs. glaucoma." (Tr. 396-98) (emphasis added). Satish Arora, M.D., then diagnosed hypertensive retinopathy in both of Guidroz's eyes on June 26, 2015. Contrary to

plaintiff's argument, he was <u>not</u> diagnosed with optic nerve damage or glaucoma.  Dr. Arora counseled plaintiff on the importance of controlling his blood pressure, and recommended further testing and a return appointment in one to two weeks.  (Tr. 396-400).  There is no evidence that Guidroz followed up on Dr. Arora's recommendations in the 11 months before the ALJ issued his decision on May 4, 2016.  A claimant's failure to seek treatment is a relevant factor to consider in determining the severity of an alleged impairment and may be used in conjunction with the medical reports to discount plaintiff's complaints of disabling pain or other limitations.  <u>Clayborne v. Astrue</u>, 260 F. App'x 735, 737 (5th Cir. 2008); <u>Doss v. Barnhart</u>, 137 F. App'x 689, 690 (5th Cir. 2005); <u>Bryan v. Halter</u>, 252 F.3d 1357, 2001 WL 422878, at *2 (5th Cir. Apr. 5, 2001) (citing 20 C.F.R. §§ 404.1530, 416.930; <u>Wren v. Sullivan</u>, 925 F.2d 123, 128 (5th Cir. 1991)); <u>Austin v. Apfel</u>, 205 F.3d 1338, 1999 WL 1338401, at *1 (5th Cir. 1999) (citing <u>Griego v. Sullivan</u>, 940 F.2d 942, 945 (5th Cir. 1991)).  In addition, Dr. Espinoza stated on a Physical Residual Functional Capacity Assessment form dated January 19, 2016 that Guidroz had no visual limitations.  (Tr. 446).  This evidence substantially supports the ALJ's finding that plaintiff's vision problem was not severe.

As to Guidroz's allegedly severe degenerative disc disease, it is unclear where in the record the ALJ found this diagnosis.  The ALJ cited two medical records, Exhibits 2F at p. 8 and 8F at p. 9 (Tr. 257, 342) in his discussion of plaintiff's non-severe impairments (Tr. 28), but those records contain no diagnosis of lumbar disc disease, and

my own review of the entire record has located no such diagnosis.  Guidroz was seen by orthopedist John P. Sweeney, M.D., on June 9, 2009, about three months before his alleged onset date for his instant applications.  Guidroz complained of back pain and reported that prior MRIs had revealed "bad discs."  He said he had received a surgery recommendation after his accident in 2000, but had never had back surgery.  Dr. Sweeney's physical examination was normal, including full range of motion in plaintiff's spine.  Dr. Sweeney noted that he had reviewed medical records indicating that Guidroz had a normal electromyogram and had shown no lumbar instability on x-rays in 2003. Dr. Sweeney did not diagnose any orthopedic impairment.  (Tr. 248-49).

Guidroz had no symptoms of back pain and physical examinations of his back were within normal limits during visits to his primary care provider, Family Nurse Practitioner Melissa Clay at Teche Action Clinic, throughout 2013.  (Tr. 256-58, 261-62, 264-67, 273-76).  Plaintiff complained of generalized arthralgia in his joints, but not of back pain, at visits to the Leonard Chabert Medical Center emergency room on February 4, 2014, and to Dr. Espinoza on February 27, March 24, and May 9, 2014, and physical examinations of his back were consistently within normal limits.  (Tr. 293-94, 298-301, 323-24).  Guidroz told consultative examiner Kenneth Cerreta, III, M.D., on May 10, 2014, that he had a history of bulging discs in his lower back and that surgery was recommended after his accident, but he did not complain to Dr. Cerreta of back pain, and he demonstrated full range of motion in his spine on physical examination.  (Tr. 326-31).

19

Dr. Cerreta placed no limitations on Guidroz's use of his back. (Tr. 333). Plaintiff's lack of complaints of back pain and normal findings in his back continued during physical examinations by Dr. Espinoza from September 2014 through December 2015. (Tr. 405, 408, 411, 416, 419, 422, 424). In a Physical Residual Functional Capacity Assessment form dated January 19, 2016, Dr. Espinoza did not cite any problems with Guidroz's back as reasons for the limitations that he assessed. (Tr. 443-50). This medical evidence substantially supports the ALJ's finding that plaintiff's back problems were not severe.

The ALJ's findings regarding the non-severity of Guidroz's impairments of pes planus, hypertensive retinopathy and degenerative lumbar disc disease are supported by substantial evidence. Accordingly, this assignment of error lacks merit.

2.    The ALJ followed proper legal standards in determining how much weight to accord the medical opinions.

Before deciding at step four of the sequential evaluation whether a claimant can return to his past relevant work, the ALJ must determine his residual functional capacity, which is the person's "ability to do physical and mental tasks on a sustained basis despite limitations from her impairments. In . . . [making this determination], the Commissioner must consider all of a claimant's impairments, including those that are not severe." Giles v. Astrue, 433 F. App'x 241, 245 (5th Cir. 2011) (citing 20 C.F.R. §§ 404.1520(e), 404.1545). Residual functional capacity "is a determination of the most the claimant can

still do despite his physical and mental limitations and is based on all relevant evidence."

Perez, 415 F.3d at 462 (citing 20 C.F.R. § 404.1545(a)(1)). The ALJ is solely

responsible for assessing the medical evidence and determining the claimant's residual

functional capacity. Taylor v. Astrue, 706 F.3d 600, 602-03 (5th Cir. 2012).

The ALJ found that Guidroz has the residual functional capacity to perform light

work, except that he is restricted to occasional postural activities, handling and fingering;

and must avoid concentrated exposure to work hazards such as heights and dangerous

machinery. At step four, the ALJ found that plaintiff had no past relevant work. The

ALJ found at the fifth step that Guidroz can perform jobs, such as security guard, usher

and information clerk, that are available in the national and state economy.

Guidroz argues that the ALJ failed to give proper weight to the opinions of his

"treating physicians," i.e., a "To Whom It May Concern" letter from internist Gayathri

Talluri, M.D., dated December 1, 2015 (Tr. 401), and Dr. Espinoza's Physical Residual

Functional Capacity Assessment form dated January 19, 2016. (Tr. 443-50). Plaintiff

also cites the narrative report of consultative examiner Dr. Cerreta dated May 10, 2014

(Tr. 326-31) and Dr. Cerreta's undated opinion letter in response to the Commissioner's

request for additional information on May 27, 2014. (Tr. 332-33). The ALJ gave little

weight to each of these opinions. He explained that he found them inconsistent with the

medical treatment records and that the evidence shows that plaintiff's treatment had been

effective in reducing his symptoms. (Tr. 31). Substantial evidence within the reports and records of these physicians themselves supports the ALJ's findings.

On letterhead of Thibodaux Medical Clinic, Dr. Talluri stated that plaintiff is her patient and has a medical history of "severe crippling rheumatoid arthritis, pulmonary fibrosis, mediastinal lymphadenopathy,[9] hypertension and right eye vision problems." Dr. Talluri said she had examined Guidroz on December 1, 2015 "and it is my medical opinion that [he] is totally disabled for any type of employment." (Tr. 401). Dr. Espinoza stated on August 27, 2014 that Guidroz had been referred to him by Dr. Talluri (Tr. 339), but the record contains no treatment notes from her or Thibodaux Medical Clinic. Thus, Dr. Talluri cannot be considered a treating source whose opinion should be given great weight in appropriate circumstances. 20 C.F.R. §§ 404.1502, 416.902. When no such treatment relationship is shown, "an ALJ is not required to give that professional's opinion greater weight." Swan v. Colvin, No. 15-60-JWD-EWD, 2016 WL 5429669, at *11 n.94 (M.D. La. Aug. 30, 2016), report & recommendation adopted, 2016 WL 5478001 (M.D. La. Sept. 27, 2016) (citing Clayborne v. Astrue, 260 F. App'x

_____

[9] Guidroz was diagnosed with pulmonary fibrosis, although not by Dr. Talluri, see n.4, supra, but the record contains no evidence of a diagnosis of mediastinal (the median partition of the thoracic cavity) lymphadenopathy (any disease process affecting a lymph node). Stedman's Medical Dictionary, http://www.medilexicon.com/dictionary/53384; http://www.medilexicon.com/dictionary/51635 (last visited May 18, 2018).

735, 737 (5th Cir. 2008); Taylor v. Astrue, 245 F. App'x 387, 391 (5th Cir. 2007);

Hernandez v. Heckler, 704 F.2d 857, 860-61 (5th Cir. 1983)).

Even if the record established that Dr. Talluri was a treating source, her mere

listing of plaintiff's diagnoses does not establish disability in the absence of medical

evidence of functional limitations that preclude Guidroz from engaging in substantial

gainful activity.  Taylor, 706 F.3d at 603; Randall, 570 F.3d at 658-59; Bordelon v.

Astrue, 281 F. App'x 418, 422 (5th Cir. 2008) (citing Hames v. Heckler, 707 F.2d 162,

165 (5th Cir. 1983)); McLendon, 184 F. App'x at 431; Harris v. Barnhart, 65 F. App'x

129, 132 (9th Cir. 2003); Estok v. Apfel, 152 F.3d 636, 640 (7th Cir. 1998); Jones v.

Sullivan, 954 F.2d 125, 128 (3d Cir. 1991); Arroyo v. Sec'y of Health & Human Servs.,

932 F.2d 82, 87-88 (1st Cir. 1991).  As the ALJ stated, Dr. Talluri's statement is contrary

to the medical evidence and plaintiff's own testimony, which are discussed below, and

the ALJ had good cause to discount her opinion.

Finally, Dr. Talluri's opinion that Guidroz is totally disabled is not entitled to any

weight.  A physician's statement that a patient is disabled does not mean that the patient

is disabled for purposes of the Act.  Such a statement is not a medical opinion and

disability is a determination that may be made only by the Commissioner.  Miller v.

Barnhart, 211 F. App'x 303, 305 (5th Cir. 2006) (citing Frank v. Barnhart, 326 F.3d 618,

620 (5th Cir. 2003)); Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001); Tamez

v. Sullivan, 888 F.2d 334, 336 n.1 (5th Cir. 1989).

As to Dr. Espinoza's opinions, he provided a Physical Residual Functional Capacity Assessment form dated January 19, 2016, in which he opined that Guidroz could perform less than sedentary work, including limited reaching, handling and fingering. Dr. Espinoza cited "pain, swelling & stiffness" in plaintiff's ankles and "bilateral hand, shoulder, elbows & wrist involvement" caused by his rheumatoid arthritis. (Tr. 444-48). The ALJ gave Dr. Espinoza's opinion little weight because it appeared to be based on plaintiff's subjective complaints and was not supported by treatment notes from Dr. Espinoza and other health care providers.

It is well established that

[t]he opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability. A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence. The opinion of a specialist generally is accorded greater weight than that of a non-specialist.

Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, the ALJ has sole responsibility for determining a claimant's disability status. [T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. The treating physician's opinions are not conclusive. The opinions may be assigned little or no weight when good cause is shown. Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.

Newton, 209 F.3d at 455-56 (quotations and citations omitted) (ellipsis and brackets in original) (emphasis added).

The ALJ had good cause to discount Dr. Espinoza's opinions. X-rays of plaintiff's hands on February 27, 2014 showed mild arthritic changes with moderate soft tissue swelling in three fingers of his right hand and mild arthritic changes in two fingers of his left hand, not typical of rheumatoid arthritis. (Tr. 309-10). After Guidroz began regular treatment with Dr. Espinoza in August 2014, he exhibited "very good" grip strength, full range of motion in his ankles, intact sensation and reflexes, and no signs of edema in his extremities on physical examinations. (Tr. 405, 408, 411, 414, 416). When Guidroz was compliant with his medications, his pain, synovitis[10] and morning stiffness in his ankles improved and Dr. Espinoza noted that plaintiff was "doing well" and should exercise. (Tr. 264, 273, 337, 405, 408-09, 411, 414, 416, 419, 422, 424). Dr. Espinoza's checklist form indicates that Guidroz has an unlimited ability to push and/or pull, including the use of hand or foot controls, and Dr. Espinoza did not check the boxes for a limited ability to use the upper or lower extremities. (Tr. 444). None of Dr. Espinoza's treatment notes document problems with plaintiff's back or other conditions that explain the limitation he assessed in plaintiff's ability to sit to less than six hours in an eight-hour day. Consultative examiner Dr. Cerreta found on May 10, 2014 that

---

[10]Synovitis is "inflammation of a synovial membrane, especially that of a joint." Id. http://www.medilexicon.com/dictionary/89127 (last visited May 17, 2018).

plaintiff had normal strength, reflexes, sensation and range of motion throughout his spine and all extremities, except he had reduced grip strength of 4/5 bilaterally. (Tr. 328). These medical records and plaintiff's own testimony that he could walk up to one mile support the ALJ's decision to afford little weight to the extreme restrictions in Dr. Espinoza's checklist opinions.

As to the ALJ's decision to give little weight to Dr. Cerreta's opinions, the physician provided a report of his consultative examination of plaintiff on May 10, 2014 and an undated, followup opinion letter sometime after May 27, 2014. Dr. Cerreta found that plaintiff's reports of persistent pain, gelling[11] and morning stiffness despite medication use and the presence of subcutaneous nodules in his fingers bilaterally, swan neck deformity[12] with mild ulnar[13] deviation in both hands, bilateral ankle swelling and antalgic gait were consistent with rheumatoid arthritis. (Tr. 326-30). As to functional limitations, Dr. Cerreta opined that Guidroz

> has severe limitations in his ability to sustain activities that require the use
> of his hands. Although Mr. Guidroz may be able to perform some degree
> of handling or filing papers initially, he is unable to sustain the activity for

---

[11]Gelling is "stiffness after rest, a finding typical of rheumatic diseases . . . , which is variably accompanied by polyarthritis and guarding of joints against activity." Segen's Medical Dictionary (2011) https://medical-dictionary.thefreedictionary.com/gelling (last visited May 18, 2018).

[12]Swan-neck deformity is hyperextension of the proximal interphalangeal joint with flexion of the distal interphalangeal joint of the finger. Stedman's Medical Dictionary, http://www.medilexicon.com/dictionary/23264 (last visited May 18, 2018).

[13]The ulna is the medial and larger of the two bones of the forearm. Id., http://www.medilexicon.com/dictionary/95485 (last visited May 18, 2018).

a prolonged length of time (> 15 minutes). . . .  Mr. Guidroz . . . can walk sufficient distance to carry on activities of daily living.  He can climb stairs.  His condition is unlikely to improve given his current disease activity unless his medication regimen is optimized.

(Tr. 333).

The ALJ had good cause to discount Dr. Cerreta's opinions.  As the ALJ stated, the limitations assessed by Dr. Cerreta appeared to be based on plaintiff's subjective complaints, which the ALJ found were not entirely consistent with the medical and other evidence.  In addition, although Dr. Cerreta found that plaintiff's grip strength bilaterally was reduced to 4/5,[14] Dr. Espinoza's treatment records after August 27, 2014 consistently state that Guidroz had very good grip strength.  Dr. Cerreta noted that plaintiff's condition was unlikely to improve <u>unless</u> his medication regimen was optimized.  About three months later, Guidroz began treating regularly with Dr. Espinoza and, as summarized above, Dr. Espinoza's notes indicate that plaintiff's symptoms improved with medication.  This evidence substantially supports the ALJ's findings regarding Dr. Cerreta's opinions.

---

[14]

Muscle strength is often rated on a scale of 0/5 to 5/5 as follows:
0/5: no contraction
1/5: muscle flicker, but no movement
2/5: movement possible, but not against gravity (test the joint in its horizontal plane)
3/5: movement possible against gravity, but not against resistance by the examiner
4/5: movement possible against some resistance by the examiner (sometimes this category is subdivided further into 4–/5, 4/5, and 4+/5)
5/5: normal strength

Hal Blumenfeld, M.D., Ph.D., <u>Neuroanatomy through Clinical Cases, Second Edition</u>, http://www.neuroexam.com/neuroexam/content29.html (last visited May 18, 2018).

"The ALJ 'is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly.'" Ramirez v. Colvin, 606 F. App'x 775, 779 (5th Cir. 2015) (quoting Scott v. Heckler, 770 F.2d 482, 485 (5th Cir. 1985)); accord Yates v. Colvin, 606 F. App'x 225, 229 (5th Cir. 2015) (citing Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir. 1994)).  In giving limited weight to the opinions of Drs. Talluri, Espinoza and Cerreta regarding plaintiff's functional limitations, "the ALJ performed [his] role of weighing conflicting evidence and resolving the conflict, and we perform our limited role of ensuring that this decision is supported by substantial evidence, which it is." Heck v. Colvin, 674 F. App'x 411, 415 (5th Cir. 2017) (citing Greenspan, 38 F.3d at 237).  When the ALJ has relied on reports from examining and reviewing physicians and adequately dealt with any dispute between them, his residual functional capacity determination "must be upheld under the substantial evidence standard, because reliance on the analysis of these doctors is more than a mere scintilla, and any evaluation of the accuracy of the analysis is beyond the scope of this court's review." Fontenot, 661 F. App'x at 277 (citing Taylor, 706 F.3d at 603; Perez, 415 F.3d at 461; Moore v. Sullivan, 919 F.2d 901, 905 (5th Cir. 1990)).

The ALJ's decision demonstrates that he carefully considered and weighed all the evidence and that his reasons are substantially supported by the evidence.  Although this court might reach a different conclusion if it were the initial factfinder, the applicable legal standard of review requires that it cannot reweigh conflicts in the evidence, which

is the ALJ's province.  The ALJ need not address each aspect of the record in detail.

"[T]here will always be some evidence that is not specifically discussed in the

Commissioner's decision.  Our review is limited to examining whether the decision to

deny benefits is supported by substantial evidence in the record, and it is here.  Likewise,

the Commissioner used the proper legal standards to evaluate the evidence, and the ALJ

adequately resolved inconsistencies in the record."  <u>Giles v. Astrue</u>, 433 F. App'x 241,

251 (5th Cir. 2011).  Accordingly, this assignment of error lacks merit.

CONCLUSION

The ALJ did not err by failing to find that Guidroz's degenerative disc disease,

pes planus deformity of both feet and vision impairment are not severe.  The ALJ used

the appropriate legal standards to weigh and resolve conflicts in the medical opinion

evidence.

**RECOMMENDATION**

Accordingly, IT IS RECOMMENDED that plaintiff's complaint be DISMISSED

WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions,

and recommendation in a magistrate judge's report and recommendation within fourteen

(14) days after being served with a copy shall bar that party, except upon grounds of

plain error, from attacking on appeal the unobjected-to proposed factual findings and

legal conclusions accepted by the district court, provided that the party has been served

with notice that such consequences will result from a failure to object.  Douglass v.

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28

U.S.C. § 636(b)(1)).[15]

       New Orleans, Louisiana, this ____23rd____ day of May, 2018.

                          JOSEPH C. WILKINSON, JR.
                        UNITED STATES MAGISTRATE JUDGE

---

[15]Douglass referred to the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.